BART F. VIRDEN, Judge
A Miller County jury convicted appellant James Ernest Duff of being a felon in possession of a firearm. The jury sentenced him as a habitual offender to twelve years' imprisonment, and he was ordered to pay a $10,000 fine. He raises two arguments on appeal. Duff argues that the trial court erred (1) in admitting a firearm into evidence over his chain-of-custody objection and (2) in denying his motion to suppress evidence. We affirm.
*740 I. Summary of Trial Testimony
On May 22, 2016, Officer William Daugherty with the Texarkana Arkansas Police Department stopped a vehicle with a defective headlight. Officer Daugherty asked the driver whether there were any weapons or anything illegal inside the vehicle, to which Duff said that he had some knives in a bag. Officer Daugherty asked to search the vehicle, and Duff consented. Before the search began, Duff told Officer Daugherty that there was also a gun inside the bag. Officer Daugherty testified that Duff had told him that the .380-caliber semi-automatic pistol did not belong to him, that it had been in the borrowed vehicle's glove compartment, and that he had unloaded it and placed it in his bag.
II. Discussion
A. Chain of Custody
The purpose of establishing chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. Laswell v. State , 2012 Ark. 201, 404 S.W.3d 818. The trial court must be satisfied within a reasonable probability that the evidence has not been tampered with, but it is not necessary for the State to eliminate every possibility of tampering. Id. Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. Id. Absent evidence of tampering, the trial court's ruling will not be disturbed unless it was a clear abuse of discretion. Id.
Officer Daugherty testified that he recognized the firearm that the State was attempting to introduce into evidence as the one he had removed from Duff's bag inside the vehicle that Duff had been driving that night. Officer Daugherty stated that he had placed the firearm inside a package at the crime scene and logged it into evidence in the department's property room. Officer Daugherty conceded that the firearm was not in the original packaging that he had placed it in at the scene but stated that it was "a pretty identifiable firearm." He further testified that he had written the firearm's serial number in his report. Defense counsel objected to introduction of the firearm, arguing that there had been "a major break in the chain of custody" because the original packaging from the scene was missing. The trial court overruled the objection, noting that a weapon with a serial number on it is a unique item, and admitted the firearm into evidence. Officer Chase Dixon, who had assisted Officer Daugherty at the scene, also identified State's exhibit 2 as the firearm that had been taken from Duff's bag.
Detective Romeo Cross with the Texarkana Arkansas Police Department testified that exhibit 2 looked like the firearm that he had test fired the day before trial. He said that he had gone to the property room, checked out the firearm on the property log, fired it at the firing range, and returned it to the property room. The property log was introduced into evidence, and Detective Cross identified his signature showing that he had checked out the firearm and returned it the day before trial and that he had checked out the firearm to bring to court on the day of trial. Detective Cross stated that, when evidence is checked out and taken somewhere, it should be signed out. Defense counsel produced a photocopy of the firearm and pointed out that there was no notation on the property log showing that it had been removed from the property room.
On appeal, Duff argues that the trial court erred in admitting the firearm into evidence over his chain-of-custody objection. He contends that the chain of custody was broken because the firearm's original packaging was missing and, although *741 the firearm had been photocopied, there was no notation in the property log as to who had opened the package to make the photocopy and when that was done.
Because this piece of evidence had a serial number that could be tracked from the crime scene to the property room and then to the courtroom, we hold that the trial court did not clearly abuse its discretion in concluding that there was a reasonable probability that the evidence had not been tampered with or otherwise compromised. Proof of the chain of custody for interchangeable items like drugs or blood needs to be more conclusive. Laswell, supra. The firearm here was not an interchangeable item because its serial number recorded at the scene matched the serial number of the firearm introduced at trial. See Harris v. State , 72 Ark. App. 227, 35 S.W.3d 819 (2000) (holding that there was no error in introduction of the firearm into evidence when an officer testified that he had seen another officer write down its serial number and log it into evidence at the property room, and that officer had retrieved the firearm from the property room under that same number and brought it to court); Meador v. State , 10 Ark. App. 325, 664 S.W.2d 878 (1984) (holding that there was no error in admitting a firearm into evidence because its serial number had been written on a receipt and two witnesses identified the firearm).
B. Motion to Suppress
In reviewing the trial court's denial of a motion to suppress, the appellate court makes an independent examination based on the totality of the circumstances and will reverse only if the trial court's ruling was clearly against the preponderance of the evidence. Burris v. State , 330 Ark. 66, 954 S.W.2d 209 (1997). The determination of a preponderance of the evidence turns on questions of credibility and weight to be given to testimony, and the appellate courts will defer to the trial court's superior position in that regard. Pokatilov v. State , 2017 Ark. 264, 526 S.W.3d 849.
At the suppression hearing, Daugherty testified that on May 22, 2016, he had observed a vehicle with a defective headlight and initiated a stop. Officer Daugherty said that he had gone to the front of the vehicle to confirm that one headlight was defective. Officer Daugherty stated that, although he had written in his report that the driver's side headlight was defective, it was actually the passenger's side. The dash-camera video from Officer Daugherty's patrol car was played. Defense counsel argued that Duff's motion to suppress should be granted because the video of the traffic stop showed that the vehicle's lights appeared to be working properly. The trial court denied the motion, finding that the officer had probable cause to initiate the stop.
Duff argues on appeal that Officer Daugherty was uncertain of the exact cause for stopping the vehicle given that he had to check the front of the vehicle. Duff also points out the discrepancy in the officer's report as to which headlight was defective. He states that the evidence from the dash-camera video, which showed the oncoming vehicle, was inconclusive as to whether the vehicle had a defective headlight. Relying on Travis v. State , 331 Ark. 7, 959 S.W.2d 32 (1998), Duff argues that this stop was unlawful and that the evidence seized should have been suppressed as "fruit of the poisonous tree."
In Travis , the police officer stopped Travis because his Texas license plate did not display expiration stickers. The supreme court held that the officer had probable cause to stop Travis's vehicle, even though it was later determined that Texas does not require drivers to display expiration stickers, as Arkansas does. The supreme *742 court did not suppress the evidence in Travis . This case does not support Duff's argument.
A police officer may stop and detain a motorist when the officer has probable cause to believe that a traffic violation has occurred. Burris, supra. Probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. Id. In assessing the existence of probable cause, our review is liberal rather than strict. Id. Whether the defendant is actually guilty of the traffic violation is for a jury or a court to decide, and not an officer at the scene. Id.
Arkansas Code Annotated section 27-36-101 (Repl. 2014) provides that it is a misdemeanor for any person to drive any vehicle that "is not at all times equipped with lamps in proper condition and adjustment." Also, section 27-36-207(a) provides that at least two lighted lamps shall be displayed, one on each side at the front of every motor vehicle.
Again, we defer to the trial court's determinations on credibility and weight of the evidence. Officer Daugherty testified that he stopped the vehicle Duff was driving because it had a defective headlight. The fact that his report was wrong about which headlight was defective goes to the weight of the evidence. Because the law requires two working headlights, there was probable cause for this traffic stop. We hold that the trial court's denial of Duff's motion to suppress was not clearly against the preponderance of the evidence.
Affirmed.
Klappenbach and Murphy, JJ., agree.