ROBERT J. GLADWIN, Judge
Appellant Duan Jamal Harris appeals his convictions of attempted rape and second-degree battery, for which he received consecutive sentences totaling 744 months in the Arkansas Department of Correction (ADC). He argues that evidence of swabs contained in a sexual-assault kit were admitted improperly at trial both (1) in violation of the Confrontation Clause and (2) without a proper chain of custody. We affirm.
I. Facts
On January 8, 2018, appellant was charged with rape in violation of Arkansas Code Annotated section 5-14-103 (Supp. 2017) and battery in the second degree in violation of Arkansas Code Annotated section 5-13-202 (Supp. 2017). The State also alleged that appellant was subject to an enhanced punishment pursuant to Arkansas Code Annotated section 5-4-501(c)(2) (Supp. 2017). He was accused of striking Kenneshia Wilson, then choking and attempting to rape her.
At trial, Wilson testified that other than a brief conversation with appellant at the library and seeing him walk down the street, she had no relationship with him. She testified that on October 1, 2016, appellant entered her home and began physically assaulting her, including smashing her head into the refrigerator and repeatedly punching her in the face. Wilson stated that she tried to escape but that appellant prohibited her from leaving, dragging her away from the window by her hair. She testified that he attempted to have sex with her but was unable to obtain an erection. Wilson testified that she received a final blow to her forehead from appellant and lost consciousness.
As part of a sexual-assault kit taken in this case, Amanda Frost took rectal, vaginal, and oral swabs from Wilson. Frost allegedly labeled the swabs and placed them in the sexual-assault kit, and the swabs subsequently were tested by the Arkansas State Crime Lab. Ultimately, the DNA on the rectal swab taken from the victim was matched to appellant within scientific certainty.
The State attempted to introduce the swabs without calling Frost to testify, and appellant objected. Appellant asserted that the swab labels were hearsay and testimonial in nature, which entitled him to confront the witness who had taken and *769 labeled the swabs before they could be admitted into evidence. He also objected on chain-of-custody grounds. The circuit court denied the motion, stating that it would permit testimony on the items in question and that "their admissibility would be determined later." When appellant renewed his motion, the circuit court ruled that the labels were not testimonial in nature and allowed admission of the swabs contained in the sexual-assault kit without testimony from Frost.
The evidence in question was introduced, and the jury found appellant guilty of attempted rape and battery in the second degree. Appellant was sentenced pursuant to a sentencing order filed on January 22, 2018, to fifty years for attempted rape and twelve years for battery in the second degree, all time to be served consecutively, along with fines. He timely filed a notice of appeal on February 12, 2018.
II. Standard of Review
Circuit courts have broad discretion in deciding evidentiary issues, and their rulings on the admissibility of evidence are not reversed on appeal absent an abuse of discretion. Brigance v. State , 2018 Ark. App. 213, 548 S.W.3d 147. A de novo standard of review is applied to questions of constitutional interpretation. Powell v. State , 2016 Ark. App. 116, 550 S.W.3d 872.
III. Discussion
A. Confrontation-Clause Analysis
At trial, appellant objected to the introduction of the swabs and all evidence obtained from them as well as the introduction of a sexual-assault kit that was introduced as having been procured from Wilson. His objection was that the items were not properly authenticated and that they constituted hearsay in violation of the Confrontation Clause.
Frost, an employee at UAMS, purportedly collected and labeled samples for the sexual-assault kit. Neither Frost nor any other witness was called to testify as to when, where, or how the sample swabs were collected. The circuit court allowed the introduction of the swabs and evidence obtained from the swabs, ruling that the labels "vaginal, cervical and oral" were not testimonial in nature. The circuit court further refused to allow the swabs to be relabeled with separate labels that were not prejudicial to appellant.
Appellant notes that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Pointer v. Texas , 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The Sixth Amendment to the United States Constitution was made applicable to the states via the Fourteenth Amendment. Id. The United States Supreme Court held that the Confrontation Clause guarantees a defendant's right to confront those who bear testimony against him. See Crawford v. Washington , 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, in the case of an unavailable witness, the defendant had a prior opportunity for cross-examination. Id. at 54, 124 S.Ct. 1354. Types of testimonial statements covered by the Confrontation Clause are described in Crawford :
Various formulations of this core class of "testimonial" statements exist: "ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; "extrajudicial statements ...
*770 contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]"
Id. at 51-52, 124 S.Ct. 1354 (internal citations omitted).
The Supreme Court further clarified the scope of testimonial statements in holding that a scientific report could not be used as substantive evidence against a defendant unless the analyst who prepared and certified the report was subject to confrontation. Bullcoming v. New Mexico , 564 U.S. 647, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). The Court noted that a document created solely for an "evidentiary purpose" made in the aid of a police investigation is testimonial. Id. The requirements of the Confrontation Clause may not be disregarded at our convenience. Id.
Here, four witnesses testified regarding the swabs and the sexual-assault kit that were ultimately introduced into evidence.[1] Rachel Ganley, a forensic serologist, testified that the swabs and the sexual-assault kit were submitted to her for testing bodily fluids, such as blood or semen. Christopher Glaze, a forensic DNA examiner, testified that the swabs were submitted to him by Rachel Ganley and that he tested the swabs for DNA. Glaze explained that he had relied on the information regarding the swabs and cuttings as marked by the original collector. Wilson testified that the swabs were taken from her to collect possible evidence from her body. Finally, Detective James Kemp testified that he picked up the sexual-assault kit, which included the collected swabs, at UAMS and delivered it to the Arkansas State Crime Lab. It is undisputed that none of the witnesses (1) collected the relevant evidence on the swabs, (2) labeled the swabs that were used to collect the relevant evidence, or (3) labeled the sexual-assault kit. According to the testimony of Ganley, she believed that the swabs and kit were collected and labeled by Frost-who was neither a witness in this matter nor asserted as unavailable by the State-at UAMS.
Appellant maintains that the labels on the swabs and kit were testimonial in nature, purporting to identify where on Wilson's body the evidence was collected. He submits that the swabs and the labeling of the swabs were for an evidentiary purpose, which appellant asserts makes them testimonial in nature. Accordingly, appellant argues that the swabs and the kit and their corresponding labels should be excluded as a violation of the Confrontation Clause because Frost was not called as a witness and was therefore not available for cross-examination.
There was no testimony stating that the swabs had been taken from Wilson's body or, if they were taken from her body, from where on her body they were taken. Moreover, no testimony was offered regarding the method of collection of the DNA on the swabs. Appellant contends that a swab taken from an alleged victim's hand that contained an alleged perpetrator's DNA would provide significantly distinguishable evidence from a swab taken from that alleged victim's cervix, vagina, or rectum. He notes that no witness was called to distinguish the swabs in this case. Appellant requested that the circuit court order the swabs be relabeled with letters rather than with descriptive body parts, but the circuit *771 court denied the request despite the original labeling as to specific body parts being descriptive in nature. Because the State relied on the testimonial nature of the descriptive labels on the swabs and the kit, which were provided by an uncalled witness, appellant argues the evidence was hearsay in violation of the Confrontation Clause.
Although Arkansas appellate courts have not had an occasion to decide whether labels placed on swabs taken from a sexual-assault victim are "testimonial" under the Confrontation Clause-which would require that the notemaker must be present for trial-we need not make that determination under these particular facts. Even if a violation of the Confrontation Clause occurred, any violation was harmless beyond a reasonable doubt. A Confrontation-Clause violation is subject to harmless-error analysis. Roston v. State , 362 Ark. 408, 208 S.W.3d 759 (2005). Whether a Confrontation-Clause violation constitutes harmless error depends on a variety of factors, including (1) the importance of the witness's testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case. Green v. State , 2015 Ark. App. 291, 461 S.W.3d 731.
Here, neither Frost's testimony nor the actual evidence derived from the swabs was essential because appellant's defense throughout the trial was that Wilson had consented. It is immaterial that DNA from the swab sample was identified as coming from appellant because at trial, both Wilson and appellant admitted that appellant unsuccessfully tried to have sex with Wilson. Specifically, Wilson testified that appellant was unable to penetrate her vagina because he was unable to sustain an erection, and after that she lost consciousness. Appellant testified that he and Wilson unsuccessfully tried to engage in consensual sexual relations; the difference in their respective testimony was whether the attempted act was consensual. Thus, testimony from Frost regarding how she obtained and labeled the swab samples would have had no impact on the determination of that key issue.
The Arkansas Supreme Court consistently has held that a sex-crime victim's testimony need not be corroborated, Brown v. State , 374 Ark. 341, 288 S.W.3d 226 (2008), nor is scientific evidence required. Moss v. State , 2010 Ark. App. 395, 2010 WL 1806484. Here, Frost's proposed testimony regarding the swabs is even less material-and her absence worked to appellant's advantage-in the jury's deliberation on a charge of attempted rape, which oftentimes involves no scientific evidence to be gathered. Here, appellant did not dispute that he may have left behind scientific evidence to be swabbed, admitting that because he took off the condom he was wearing there may have been "some pre-ejaculation" present on Wilson's body. Wilson was unconscious during part of the assault; thus, she could not testify regarding penetration. That fact, coupled with no testimony from Frost, left the jury with a lack of evidence as to whether the fluid sample, determined to be appellant's, was collected inside or outside of Wilson's vagina and anus. Because there was no proof of penetration, a directed verdict as to the original rape charge was granted.
We hold that Wilson's testimony, accompanied by her serious injuries, provided substantial evidence from which the jury could find that the admitted sexual encounter between appellant and her was not consensual. Because the overall strength of *772 the prosecution's case is a factor to be considered in deciding whether Confrontation-Clause error is harmless, Andrews v. State , 344 Ark. 606, 42 S.W.3d 484 (2001), this evidence lends further support that Frost's absence at trial, if error, was harmless beyond a reasonable doubt.
Finally, any Confrontation-Clause violation stemming from Frost's nonappearance also was harmless as to appellant's battery conviction. Frost's testimony about the swabs was irrelevant to the conviction for battery, and the evidence of battery was overwhelming. Andrews, supra. A person commits battery in the second degree if with the purpose of causing physical injury to another person, he causes serious physical injury to any person. Ark. Code Ann. § 5-13-202 (Repl. 2013). Wilson testified that appellant entered her house and "bashed her head into the fridge." He repeatedly punched her to the extent that she suffered a broken jaw, nerve damage, damage to her neck, and a broken nose. Responding police officers confirmed that Wilson was bloody, had a split lip and a swollen face, and was disoriented from the beating. Appellant's beating of Wilson was purposeful as evidenced by his testimony that he hit Wilson "only" "three or four times" when she would not give him the forty dollars back that he had given her when he arrived. Appellant also admitted that he threw Wilson around and knocked her down. Because testimony about the swabs from Frost would have had no bearing on this evidence, her absence from trial was harmless to both the attempted-rape conviction and the second-degree battery conviction.
B. Authentication Analysis
Arkansas Rule of Evidence 901(a) (2018) provides that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Rule 901 further states "that the testimony of a witness with knowledge that a matter is what it is claimed to be can authenticate evidence, and also that appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances can be used to authenticate evidence." Id. ; see also Gulley v. State , 2012 Ark. 368, at 13, 423 S.W.3d 569, 578.
The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. Duff v. State , 2018 Ark. App. 112, 540 S.W.3d 738. Authentication requirements are satisfied if the circuit court concludes, in its discretion, that the evidence is genuine and that, in reasonable probability, it has not been tampered with or altered in any significant matter. See id. ; see also Chatmon v. State , 2015 Ark. 28, 467 S.W.3d 731. Minor uncertainties in the proof of chain of custody are matters to be weighed by the jury following arguments of counsel, but they do not render the evidence inadmissible as a matter of law. Duff, supra.
Appellant alleges that the circuit court erred in allowing the introduction of the swabs and the sexual-assault kit without proper authentication. Frost, who allegedly collected the evidence on the swabs, was neither present to testify nor subject to cross-examination. The testimony of a witness with knowledge that a matter is what it is claimed to be can authenticate evidence; but here, there was no witness with knowledge about who collected the swabs, when and where the swabs were collected, or what method of collection was employed to obtain the evidence on the swabs. Appellant urges that this is not a "minor uncertainty" and that *773 the circuit court and jury were left to assume that the swabs came from the alleged victim and to speculate as to the manner of collection, the body parts swabbed, and the procedure for collection. While DNA may be distinctive, appellant argues that there is no credible, admissible evidence that the swabs were taken as labeled.
Although appellant acknowledges that appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances can be used to authenticate evidence, he argues that is not sufficient under these facts. He notes that this court has held that proof of the chain of custody for interchangeable items like blood and DNA needs to be more conclusive than for other evidence. Duff, supra. Appellant argues that regarding these swabs, the proof was not more conclusive. There was a lack of testimony to connect the chain of custody of how the evidence was collected on the swabs to the swabs that were examined by the witnesses from the crime lab.
Appellant cites Timmons v. State , 286 Ark. 42, 688 S.W.2d 944 (1985), in which the State attempted to call a forensic serologist as a witness despite knowing that the witness could not connect the chain of custody because the examining doctor who collected the evidence that was sent to the forensic serologist did not testify at trial. The Arkansas Supreme Court found this conduct prejudicial and ordered a new trial. Appellant maintains that the Timmons facts are similar to this case because there was no witness to connect the chain of custody, and allowing such testimony was prejudicial to appellant.
We disagree and hold that that the circuit court did not abuse its discretion regarding the chain of custody in the introduction of evidence. This court will not reverse a circuit court's ruling on the admissibility of evidence under the chain-of-custody rule absent a showing that the court clearly abused its discretion. Freeman v. State , 2010 Ark. App. 8, at 4, 2010 WL 26386. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision; rather it requires that the circuit court act improvidently, thoughtlessly, or without due consideration. Robertson v. State , 2018 Ark. App. 13, 2018 WL 523250.
Although the circuit court must be satisfied within a reasonable probability that the evidence has not been tampered with, it is not necessary that the proponent of the evidence eliminate every possibility of tampering. Duggar v. State , 2013 Ark. App. 135, at 7, 427 S.W.3d 77, 83. Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the trier of fact, but they do not render the evidence inadmissible as a matter of law. Id.
Wilson testified that the attempted rape and battery occurred on October 1, 2016. After police arrived, she was taken to UAMS in Little Rock where she was swabbed by a nurse. Detective Kemp testified that he picked up the rape kit that contained the swabs at UAMS on October 27, 2016. The kit was taped and sealed. He took the kit "straight to the [Arkansas] crime lab," signed an evidence-submission form, and left the kit with the crime lab. The circuit court was satisfied that the evidence provided by Wilson and Detective Kemp was sufficient to establish a chain of custody and the authenticity of the swabs contained in the kit and that the evidence had not been tampered with or altered. See Curtis v. State , 2015 Ark. App. 167, 457 S.W.3d 700. Also, considering that appellant does not contend the evidence was contaminated, we cannot say the circuit *774 court abused its discretion in admitting the swabs and the kit. Id.
Nevertheless, even if the chain of custody somehow was lacking, for the reasons stated above, any error is harmless under the specific facts of this case. Appellant admitted that he battered Wilson and tried to have sex with her, although he claimed it was consensual. See Mosley v. State , 323 Ark. 244, 914 S.W.2d 731 (1996) (witness's testimony on chain of custody held to be harmless error because defendant claimed consent to sexual intercourse).
Affirmed.
Virden and Vaught, JJ., agree.

Officer Michael Danner testified that he took eighteen swabs; however, those swabs were neither sent to the crime lab nor introduced into evidence as part of the sexual-assault kit.