DAVID M. GLOVER, Judge
Tyree Goins was tried by a jury and found guilty of the offense of rape. His *302 victim, TL, was under fourteen years old at the time of the offense. Goins raises four points of appeal, contending the trial court erred in denying 1) his motions for directed verdict based on pre-trial and trial-defense motions, 2) his motion for directed verdict based on defense arguments concerning inconsistencies between the victim's pre-trial and trial testimony, 3) his motion for directed verdict restricting defense arguments concerning the relationship between the victim's mother and Goins being the motive for the charges against him, and 4) his objection to jail-phone recordings being admitted for the jury to hear. We affirm.
TL testified she was born on October 23, 2001. She stated she was thirteen years old when she met Goins at the Fox Creek Apartments in Texarkana. TL explained she lived in an apartment complex located next door to his. According to her, approximately two weeks after meeting Goins, they had sex for the first time. She described several subsequent sexual encounters with Goins. As abstracted, she described in part her first sexual encounter with Goins as follows:
One night we were outside. He asked me if I wanted to go to the store and I said yes. And we didn't go to the store right away. And we, we went somewhere and had sex. No, ma'am, I do not remember about what time of year it was. Yes, ma'am, I do remember it was before my fourteenth birthday.
....
Yes, ma'am, it was a burgundy car with tinted windows. I can tell you what happened in the burgundy car with tinted windows. We had sex. I don't know where he parked and told me that he would not hurt me, that I'd be okay. He told me to take off my clothes and he got out of the car and got in the back seat where I was and we had sex. He said everything was going to be okay and he was not going to hurt me.
I can tell you what I mean when I say he had sex with me. When a male sticks their penis in a female's vagina, Yes ma'am, that did happen. No, ma'am, I do not know what made it stop. Next, we left. No, ma'am, I do not know if anything came out of his penis. No, ma'am, nothing came out of my vagina. Then we left and went to Church's and back to Fox Creek.
I remember that it made my vagina feel weird.... It was my first time so it felt weird.
TL then testified about at least six additional sexual encounters with Goins. She described another time they had sex in the same burgundy car in the parking lot of the Links Apartments. She testified Goins "started licking my vagina and then we start[ed] having sex." She said she took her clothes off; he just pulled down his pants; he told her to turn around and bend over; he was behind her and he started having sex, which she again described as a "man's penis going in the vagina"; and she said that was what happened that day at the Links Apartments.
She explained they also had sex in a Fox Creek apartment where nobody lived because it was getting fixed. They were in one of the rooms in the apartment; they had sex in that room. She said her pants came off; his pants "got pulled down."
She also described a sexual encounter that took place in his apartment at Fox Creek where he lived with the mother of his children. TL testified they did not have sex, but she described the encounter as going into his room and "his penis was in my mouth." The kids were outside playing.
She described another time when they were parked by the fairgrounds and had sex in the burgundy car. She said when *303 they finished having sex, Goins grabbed a towel. TL acknowledged that when she said they had sex, it was the same definition she had previously given. She then described a time when he came to get her at the Village Park South apartments, and they "went somewhere" where they had sex in a black Jeep; she did not know where they were, but she described the route they took to get there.
Finally, she described an encounter that took place in a "grayish silver looking car" in a "big parking space behind E-Z Mart and Wendy's on State Line and by Motel 6." She testified they were in the car and had sex and that "sex" meant what it had meant all the other times. She said at least one or more of the seven sexual encounters she described happened before her fourteenth birthday on October 23, 2015. TL explained her brother saw texts she and Goins had exchanged on her brother's phone, and her brother showed their mother, who called the police.
Goins's first three points of appeal challenge the trial court's denial of his motion for directed verdict, attempting to encompass arguments within the sufficiency challenge that are not pertinent. We address them together. In reviewing the denial of a motion for directed verdict, we treat the motion as a challenge to the sufficiency of the evidence. Wiseman v. State , 2017 Ark. App. 371, 526 S.W.3d 4. We examine the evidence to determine whether the verdict is supported by substantial evidence. Id. Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. Id. We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. Id. Variances and discrepancies in the proof go to the weight or credibility of the evidence and are matters for the fact-finder to resolve. Id. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. Id. Accordingly, when there is evidence of a defendant's guilt, even if it is conflicting, it is for the jury as fact-finder to resolve, not the court. Id.
Arkansas Code Annotated section 5-14-103 (Repl. 2013) defines the offense of rape in pertinent part:
(a) A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person:
....
(3)(A) Who is less than fourteen (14) years of age.
"Deviate sexual activity" means any act of sexual gratification involving (A) the penetration, however slight, of the anus or mouth of a person by the penis of another person; or (B) the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person. Ark. Code Ann. § 5-14-101(1). A rape victim's testimony may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child. Garcia v. State , 2017 Ark. App. 457, 530 S.W.3d 862. A rape victim's testimony need not be corroborated, nor is scientific evidence required, and the victim's testimony describing penetration is enough for a conviction. Id.
We begin by noting that Goins's efforts to encompass into his sufficiency challenges the trial court's denial of pre-trial and trial motions, inconsistencies in the testimony, and TL's mother's relationship with Goins fail. They do not provide grounds for a sufficiency challenge. Moreover, even if the trial court had erred in the ways argued by Goins, it would not *304 change the outcome of his challenges to the sufficiency of the evidence. In reviewing sufficiency challenges, all the evidence presented, including that which may have been inadmissible, is considered in the light most favorable to the State. Britt v. State , 2015 Ark. App. 456, 468 S.W.3d 285.
Here, Goins was charged with only one count of rape. TL testified about at least seven sexual encounters that would satisfy the definition of either sexual intercourse or deviate sexual activity. She was able to give graphic descriptions of those encounters. She explained she regarded sexual intercourse as any time a man inserted his penis into a woman's vagina. In addition, she testified that at least one, if not more, of the encounters happened before her fourteenth birthday. We hold there is substantial evidence to support Goins's rape conviction.
For his remaining point of appeal, Goins contends the trial court erred in allowing the introduction of a CD and a call log involving recorded phone calls from the jail where Goins was housed at the time. The recordings were introduced through the testimony of Alan Fincher, who was employed as an investigator for the prosecuting attorney's office. Before that, Fincher had served as a police officer with the Texarkana, Arkansas Police Department for twenty-five years. He testified he had obtained the recordings in his role as investigator for the prosecutor's office; he downloaded the disc; he was able to identify the recordings based on a number or identification code; the CD contained phone calls from an account for James Ross; and they were recorded on February 15, 2018. He said the accompanying exhibit was the "call detail record." He further explained the information downloaded to the disc was recorded on a machine capable of making an accurate recording of telephone calls that are being made over that system. He explained he listened to the original phone call and the phone call on the disc and they were one and the same, with no alterations. He testified the disc contained a true and correct copy of the recording as he listened to it on the original recording device; the call log was for James Ross; he knew that because there was an identification number for Ross and also Ross's name and specific telephone number were listed on the record. Fincher further explained that the call log was generated through the same system from which the call was recorded and that the call log corresponded with the calls contained on the disc.
Goins objected "based on [Alan Fincher's] not being in control of that system." The trial court overruled the objection, stating "the admissibility of this evidence is not in question, but the jury can give it whatever credibility they find in it." Subsequently, the trial court planned to limit what the jury heard from the CD, concluding that it presented hearsay in some places-a concern raised by the trial court, not Goins. Not only did Goins not object based on hearsay, he also ultimately asked the trial court to play the entire CD, which was done. It is well settled that only the specific objections and requests made at trial will be considered on appeal. Thomas v. State , 2016 Ark. App. 195, 487 S.W.3d 415. Arguments not raised below, even constitutional ones, are waived, and parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of the objections and arguments presented at trial. Id. Accordingly, we find no merit in the hearsay arguments concerning these recordings that exceed the scope and nature of the objection presented to the trial court.
In addition, Goins further expands his trial argument to add an argument *305 before this court that the playing of the recorded conversations destroyed his constitutional right not to testify because he was left "with a choice of evils"-"[h]e could remain silent as he chose to do and allow the implications of the recordings to go unchallenged, or he could give up his right not to be made to testify and take the witness stand." Again, in order to preserve even a constitutional argument for our consideration on appeal, the argument must first be raised to the trial court. Id.
Finally, with respect to the evidentiary challenge Goins did raise at trial, which challenged the recordings' authenticity, we find no abuse of the trial court's discretion in overruling the objection. Arkansas Rule of Evidence 901(a) provides that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Harris v. State , 2018 Ark. App. 520, 561 S.W.3d 766. Rule 901 further states "that the testimony of a witness with knowledge that a matter is what it is claimed to be can authenticate evidence, and also that appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances can be used to authenticate evidence." Id. at 10, 561 S.W.3d at 772. The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. Id. Authentication requirements are satisfied if the trial court concludes, in its discretion, that the evidence is genuine and that, in reasonable probability, it has not been tampered with or altered in any significant matter. Id.
Here, Goins's objection was limited to the assertion Alan Fincher was not in control of the system that recorded phone calls and therefore not qualified to authenticate it. Goins made no assertion the recordings had been tampered with or altered in any fashion. As previously recounted, Fincher testified at length about how he downloaded the conversations on the CD and verified their accuracy. He further explained how the calls are identified by specific numbers and how the call log was generated by the same system that records the calls. He testified the disc contained a true and correct copy of the recording as he listened to it on the original recording device. We hold the trial court did not abuse its discretion in allowing this evidence. As the trial court noted, the jury could give the disc and call log whatever credibility it found in it. Minor uncertainties in the proof of chain of custody are matters to be weighed by the jury following arguments of counsel, but they do not render the evidence inadmissible as a matter of law. Id.
Affirmed.
Abramson and Brown, JJ., agree.